IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFERY WAINWRIGHT, | : | CIVIL ACTION NO. **3:CV-04-1175** |
| | : | |
| | : | |
| Plaintiff | : | |
| | : | (Magistrate Judge Blewitt) |
| v. | : | |
| | : | |
| BOROUGH OF LANSFORD, et al., | : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM AND ORDER**

**I. Background.**

On December 8, 2004, the Defendants filed a Motion to compel settlement of this § 1983 civil rights case. (Doc. 14).[1] After moving to compel settlement, the Defendants issued a subpoena on Plaintiff's counsel, Attorney Deratzian, requesting production of all documents from him regarding his settlement communications with the Plaintiff, including documents relating to the terms of Attorney Deratzian's authority to settle the present case. Attorney Deratzian objected to Defendants' subpoena, and Defendants then filed a Motion to Enforce it. (Doc. 37).[2]

In his response to the Defendants' Motion to Enforce the Settlement, the Plaintiff indicated that he did not give his attorney authority to settle this case for only the monetary amount of

---

[1] The District Court referred this case to the undersigned Magistrate Judge on January 25, 2005, for disposition of the Defendants' Motion to Enforce Settlement and all related motions. (Doc. 22).

[2] Attorney Deratzian filed a Petition to Withdraw as Plaintiff's Counsel in this case. (Doc. 20). By separate Order, we granted this Petition. (Doc. 43).

$125,000, and claimed that there were other unresolved issues concerning lost benefits, which had not been agreed upon in order to constitute a meeting of the minds on all issues, that had to be resolved. (Doc. 33, ¶ 8.). Therefore, the Plaintiff contended that this case was not settled. Plaintiff stated that he did not fully agree to enter into the settlement agreement. (*Id*.). Plaintiff further averred that he never authorized his attorney to settle this case for $125,000 without any provision for additional wage and medical benefits. (*Id*., ¶ 9.). The Plaintiff denied receiving any confirming letter from his attorney that all of his pertinent issues had been resolved, and reiterated that he believed the $125,000 was only an offer. (*Id*.).

In his opposition Brief to the Motion to Enforce Subpoena, the Plaintiff contended that he did not give his attorney authority to settle this case and that his attorney breached the attorney/client privilege by disclosing to defense counsel confidential communications he (Plaintiff's attorney) had with Plaintiff. (Doc. 39, p. 1). The Plaintiff argued that the Defendants' subpoena should be quashed because it requests documents protected under the attorney/client privilege. (*Id*., p. 2). Plaintiff stated that his communications with his attorney regarding settlement negotiations were confidential, and it was his intent that they would not be disclosed to defense counsel. Plaintiff reasserted his claim that his counsel has already breached the attorney/client privilege by directly releasing confidential information regarding his (Plaintiff's) communications with his counsel about settlement. (*Id*., pp. 3-4). Plaintiff also relied upon a recent Pennsylvania Supreme Court case, *Reutzel v. Douglas*, 870 A.2d 787 (Pa. 2005), 2005 WL 711699 (3-29-05), attached to his Brief (Doc. 39), which held that a settlement agreement was not enforceable unless the attorney had express authority to bind his client to such an agreement. (*Id*., p. 4).

2

Plaintiff's counsel, Attorney Deratzian, filed a Brief as intervenor to Plaintiff's Answer to the Defendants' Motion to Enforce Subpoena. (Doc. 41). Attorney Deratzian stated that there were documents responsive to the Defendants' subpoena, but that none have been disclosed to defense counsel, either physically or in substance. Attorney Deratzian stated that he had actual authority from the Plaintiff to settle this case, and that the documents memorializing this authority were relevant and unavailable to Defendants so as to overcome the attorney/client privilege. He also stated that the privilege may have been waived by the Plaintiff, since he (Plaintiff) asserted that his attorney acted without actual authority. (*Id*., pp. 1-2).

Both Defendants and Attorney Deratzian took issue with Plaintiff's claim that the recent *Reutzel* case supported his position. They argued that this case supported their position that any written communication relevant to whether Attorney Deratzian had express authority to settle this case must be produced. (Doc. 41, p. 2 & Doc. 42). In our May 3, 2005, Order (Doc. 44), we agreed with Defendants and Attorney Deratzian that the *Reutzel* case supported their position, and not the Plaintiff's. We stated that in *Reutzel,* Plaintiff's counsel did not have the Plaintiff's express authority to settle the case, only apparent authority. The *Reutzel* Court held that defense counsel could not rely upon Plaintiff counsel's apparent authority to settle the case in order to enforce a settlement agreement. Rather, the Court held that a settlement agreement required evidence of express authority. *See Reutzel v. Douglas*, 2005 WL 711699 at * 5. (Doc. 39, attachment).

In the present case, Plaintiff's counsel maintains that he had actual authority to settle the case, and not mere apparent authority, as the Plaintiff's counsel only had in *Reutzel*. We found that the *Reutzel* case supported Defendants' position that any documents regarding whether Attorney

Deratzian had express authority to settle this case must be produced. *See Reutzel v. Douglas*, 870 A.2d 787 (Pa. 2005), 2005 WL 711699 at * 6 (holding Plaintiff counsel's apparent authority was not sufficient to bind the Plaintiffs to the terms of the settlement agreement and that "an attorney may only bind his client to the terms of a settlement based on express authority") (citation omitted).

We also concurred with the Defendants regarding the waiver of Plaintiff's objection to their request for the production of documents, including documents of communications between the Plaintiff and his attorney, on the basis that the documents were protected by the Attorney/Client Privilege.[3]

The Defendants sought documents reflecting the specific authority to settle this case which was communicated in writing between Plaintiff and his counsel. Defendants contended that they cannot show the requisite element that Plaintiff's counsel had express authority to settle this case, as opposed to apparent authority, without the written communications between the Plaintiff and his attorney regarding this authority. We agreed with the Defendants in light of the holding in *Reutzel*. We also agreed with Defendants that the Plaintiff could not have it both ways, on the one hand claiming that communications between him and his counsel did not give his counsel full authority to settle this case, and on the other hand seeking to protect these communications as protected under the attorney/client privilege. (Doc. 37, pp. 2-3).

Additionally, we found that the Plaintiff had waived his attorney/client privilege in this case. The Plaintiff claimed that his attorney went beyond any authority he gave him by agreeing to a full

---

[3]We note that the documents at issue related to or memorialized the terms of the authority of Plaintiff's counsel to settle the instant case.

4

settlement that only contained a monetary settlement without addressing the other issues he claimed were necessary to be resolved in order to have a final settlement, such as medical benefits for Plaintiff and his family. The Plaintiff claimed that he did not give his attorney express authority to enter into the settlement agreement at issue in this case, which was solely for a monetary amount ($125,000).

We found that the subpoenaed documents related to communications between the Plaintiff and his legal counsel concerning terms of counsel's authority to settle this case. We further found that the Plaintiff waived the attorney/client privilege since he relied upon communications between him and his counsel to establish his claim that he did not give his counsel full express authority to settle this case. Therefore, we granted the Defendants' Motion to Compel compliance with their Subpoena (Doc. 37) and directed the production of the documents sought therein, including all communications between Plaintiff and his counsel relating to the terms of his counsel's authority to settle this case.[4]

We held in abeyance the Defendants' Motion to Enforce the Settlement in this case (Doc. 14), and ordered the parties, including intervenor Attorney Deratzian, to file supplemental briefs regarding this Motion after the documents subpoenaed by the Defendants were produced in accordance with our stated foregoing Order. (Doc. 44).[5]

---

[4] See Doc. 44.

[5] Attorney Deratzian also requested that, if the Court finds that this case was settled, his agreed upon attorney fee of $50,000 be set aside by the Defendants from the settlement amount and be paid directly to his law firm. (Doc. 20). On May 3, 2005, we entered an Order granting Attorney Deratzian's Motion to Withdraw as Plaintiff's counsel, and we granted

5

The parties have filed their supplemental briefs as we directed, and the Motion to Enforce Settlement is now ripe. (Docs. 45-50).[6]

## II. Discussion.

Since we have detailed the factual and procedural background of this case relevant to the Defendants' Motion to Enforce Settlement, we shall not reiterate them. The issue that must be decided is whether the Plaintiff gave his attorney express authority to enter into a settlement agreement and fully settle this case for a monetary amount of $125,000 and an agreement to continue medical benefits for Plaintiff.[7] As mentioned above, in *Reutzel v. Douglas*, 870 A.2d 787 (Pa. 2005), 2005 WL 711699 at * 6, the court held that Plaintiff counsel's apparent authority was not sufficient to bind the Plaintiffs to the terms of the settlement agreement and that "an attorney may only bind his client to the terms of a settlement based on express authority." (citation omitted).

---

Attorney Deratzian leave to intervene in Defendants' Motion to Enforce Settlement and to seek enforcement of his Fee Agreement and Retainer with Plaintiff. (Doc. 43).

[6]Defendants and Plaintiff have attached exhibits to their respective briefs. (Docs. 45 & 47). Defendants' Motion to Enforce Settlement also has exhibits attached thereto. (Doc. 14).

[7]There is no dispute that the Plaintiff did not execute the Defendants' proposed Settlement Agreement and Release attached to their Motion. (Doc. 45, Ex. A). Regardless, courts have held that oral settlements between the parties are enforceable even if the parties intended to formalize the oral settlement in a written agreement or written release. *See Storms v. O'Malley*, 779 A. 2d 548 (Pa. Super. 2001) (court held that an oral settlement in a medical malpractice case was enforceable).

The Court in *Storms* stated as follows:

> The enforceability of settlement agreements is ordinarily determined by general principles of contract law. *Century Inn, Inc. v. Century Inn Realty, Inc.,* 358 Pa.Super. 53, 516 A.2d 765, 767 (1986). [T]here is a strong judicial policy in favor of voluntarily settling lawsuits. *Rothman v. Fillette,* 503 Pa. 259, 469 A.2d 543, 546 (1983) (citations omitted); *In re Trust of Mintz,* 444 Pa. 189, 282 A.2d 295, 299 (1971). The primary reason is that settlement expedites transference of money into the hands of a complainant. A secondary reason is that settlement reduces the burden on and expense of maintaining the courts. *Rothman, supra.* Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should. When the effort is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it. *Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197, 1199 (1969). Compromises may take the form of written agreements or oral settlements, both of which are recognized as valid and enforceable. 1 P.L.E. Accords and Compromise § 3 (1986). Of course, preliminary negotiations do not constitute a contract. "However, if the parties orally agree to all of the terms of a contract between them and mutually expect the imminent drafting of a written contract reflecting their previous understanding, the oral contract may be enforceable."
>
> An oral settlement agreement may be enforceable and legally binding without a writing. "Where parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral agreement." *Kazanjian v. New England Petroleum Corp.,* 332 Pa.Super. 1, 480 A.2d 1153, 1157 (1984) (Citations omitted). As a corollary to the aforesaid: If the parties agree upon essential terms and intend them to be binding "a contract is formed even though they intend to adopt a formal document with additional terms at a later date."

*Storms,* 779 A. 2d at 557.

We have reviewed the briefs submitted by the parties, as well as the attached exhibits, and agree with Defendants that Plaintiff's counsel did indeed have express authority from the Plaintiff

7

to fully settle this case in August, 2004, for the sum of $125,000 and for an agreement on continued medical coverage for Plaintiff.

Defendants have submitted an Interoffice Memo from Attorney Deratzian to the Wainwright File dated August 18, 2004, which stated as follows:

> On August 2, 2004 I received a voicemail from Jeffrey Wainwright indicating that he would settle all aspects of his case for $125,000 if medical insurance benefits could be negotiated. He indicated that he thought they could be obtained through Heart & Lung or disability settlement.
>
> On that same day, I left a voicemail for David Karamessinis relaying this settlement demand.

(Doc. 45, Ex. B).

Attorney Deratzian sent Plaintiff a letter dated August 16, 2004, again indicating that he received a voice mail from Plaintiff on August 2, 2004, and "indicated that you would accept this settlement [the sum of $125,000] provided there was some provision for medical benefits for you and your family. You stated that you thought either Heart & Lung or Disability Retirement could provide such insurance." (*Id.*, Ex. C). The letter continued as follows:

> I forwarded your request to David Karamessinis, Esquire, who in turn left me a voicemail that the health insurance issue was something that would have to be approved by the Borough Council, and that he would pursue the matter with either Joe Rudolf or Bob Yurchak. I will advise when there has been some determination of this issue.
>
> Understand that if the Borough accepts the terms as set forth above, it will constitute a binding settlement agreement. Therefore, please contact me immediately if the above does not accurately state your demand.

Thus, the health insurance issue which Plaintiff was also seeking as part of a resolution of his case, was to be pursued with the Borough Council. The parties agreed that the Defendants would pay Plaintiff a sum certain of $125,000.

In a handwritten note dated August 5, 2004, Defendants' counsel indicated as follows:

> Case settled for $125k. Reinstatement not an issue, not being pursued.
>
> Only open issue is possib. of some med coverage either thru Heart & Lung or Disability.
>
> I'll call Solicitor Yurchak and advise him that case settled – all issues closed.

(Doc. 14, Ex. B).

Also, in a typed Memo to the file dated August 5, 2004, Defendants' counsel wrote that Attorney Deratzian advised him "that Wainwright agreed to settle the case on all issues related to his employment with the Borough of Lansford for the sum of $125,000.00. The only left over issue was his desire to get some medical benefits either through Heart and Lung, disability or some other fund." (Doc. 14, Ex. A).

As Plaintiff's former counsel mentioned, the issue of medical coverage was still open, but was to be pursued through Heart & Lung or Disability. We find that the evidence from the file of Plaintiff's counsel and the evidence from the file of Defendants' counsel corroborate the understanding of each attorney that the case had settled for $125,000 and that the medical coverage issue, while unresolved at the time, would be followed up through separate channels but did not affect the monetary settlement of the case. Further, there was clearly no demand made by Plaintiff at this time of the settlement offer and acceptance that he had to be reinstated as part and

parcel of the settlement agreement. Nor did the Plaintiff make his express settlement authority which he gave to Attorney Deratzian contingent upon his job reinstatement.

Attorney Deratzian then obtained an agreement from the Defendants, in addition to $125,000, for the "cleansing of [Plaintiff's] employment records, restoration of [his] employee benefits, to be paid by the Borough for six months, followed by eighteen months of COBRA coverage." (Doc. 45, Ex. D). Thus, the medical benefit coverage issue, which was the only remaining issue regarding the settlement agreement, was also resolved by Attorney Deratzian.

A letter from Attorney Deratzian to Plaintiff dated October 27, 2004, reveals that for the first time, as of October 26, 2004, Plaintiff advised his counsel that he would not settle unless he was reinstated by Defendants to his prior position with the Lansford Police Dept. or that he did not have to withdraw his grievance regarding his termination. (*Id*.). Attorney Deratzian indicated to Plaintiff in his letter that he had previously made clear to Plaintiff that waiver of his grievance and an agreement not to seek reinstatement were conditions of settlement. Counsel then stated, "Prior to our conversations in August, I made this clear to you, and you gave me the authority to settle. A judge could very well force you to settle this case based upon the authority you gave." (*Id*.).

We agree with Defendants (Doc. 45, p. 4) that the notes of their counsel dated August 5, 2004, are completely consistent with and substantiate the understanding of Plaintiff's counsel regarding his express settlement authority as outlined with great clarity and specificity in his letters to Plaintiff. (Doc. 14, Exs. A & B).

Attorney Deratzian wrote Plaintiff another letter dated November 29, 2004, restating that Plaintiff gave him express authority to settle his case for the terms mentioned above. Attorney

10

Deratzian wrote as follows:

> As I also informed you at the settlement conference, the Borough has a good argument that you gave me authority on August 2 to settle your case for $125,000 plus medical benefits, which in fact you did. I memorialized your message to me in your file, and on the same day communicated your demand to David Karamessinis. I had previously told you repeatedly that you would have to agree to withdraw the grievance, yet you indicated you would settle for the money plus medical benefits, without reserving the grievance. I am informed that you met with Lori of my office when you made your final payment on the criminal case, and confirmed to her that you were just waiting for me to obtain medical benefits. Since the Borough did agree to medical benefits, they accepted your terms, and a binding settlement was reached. As I stated in my last letter, I was shocked when you insisted on reinstatement in the last month, only after Jeremy Sommers was indicted. While that might change the circumstances, it does not negate the authority that you gave me in August.

(Doc. 45, Ex. E, p. 2).

Once again, on December 9, 2004, Attorney Deratzian wrote to Plaintiff stating that he believed that the factual and legal assertions made in the Defendants' instant Motion to Enforce Settlement were true and correct. Attorney Deratzian then wrote as follows:

> As I have stated repeatedly, to which you have never responded nor ever denied, you gave me authority on August 2, 2004 to settle your case in the amount of $125,000 plus medical benefits. On August 16, 2004 after I returned from vacation, I wrote to you confirming that these were the only terms of your demand. You did not respond to this letter. Prior to August 2, 2004 we had discussed the prospect of reinstatement, and I explained to you that if you agreed to a monetary settlement, reinstatement would be off the table, and your grievance would have to be abandoned. In September, 2004, you brought in the balance of payment for your criminal case, and verbally confirmed to my secretary Lori that you were awaiting a decision on medical benefits as the only remaining issue.

(Doc. 45, Ex. F, p. 1).

11

The letter of Attorney Deratzian continued that:

> When the Borough accepted your terms, and additionally allowed any claim that you may have under Heart & Lung or Disability to be preserved, you suddenly refused to further cooperate in settlement. I wrote to you on October 27, 2004, confirming our conversation of the previous night, expressing my surprise at your sudden change of mind, and reiterating that you had given me authority to settle on terms that did not include reinstatement. Again, you did not respond to this letter in any way.

(*Id.*).

In Attorney Deratzian's Memorandum of Intervenors, he reiterates Defendants' assertion that he acted with express authority from Plaintiff; that Plaintiff was apprised of the settlement terms; that Plaintiff affirmed the settlement terms as outlined in the August 16 letter; and that after the settlement had been accepted by Defendants, Plaintiff tried to repudiate it. (Doc. 46, p. 1). Attorney Deratzian then requests that if the Court enforces the settlement, it also find that he is entitled to $50,000 from the settlement amount pursuant to his Retainer Agreement with Plaintiff. (*Id.*, p. 2).

In his Brief, Plaintiff claims that he never authorized Attorney Deratzian to settle this case without resolution of all issues including "additional wage and or heart and lung benefits, disability benefits, medical benefits or resolution of his grievance filed against the Borough for reinstatement in a separate proceeding." Plaintiff then states that he never received any documents detailing the terms of a settlement agreement and that no final settlement agreement was reached. (Doc. 47, p. 1). We disagree with Plaintiff based upon the above specified evidence, in particular the letters from Attorney Deratzian to Plaintiff, which clearly and emphatically outlined the terms of the settlement agreement with Defendants and plainly stated that if Defendants accepted the terms,

it would constitute a binding settlement agreement. Plaintiff was given the opportunity to correct any inaccuracies in the settlement demand as understood by Attorney Deratzian that he had express authority to make, but Plaintiff did not respond, according to the evidence. (Doc. 45, Exs. C & F). Once the terms were accepted by the Defendants, we find that all material terms of the settlement agreement were agreed upon and the settlement agreement was enforceable.

The Plaintiff argues that there was no meeting of the minds between him and Attorney Deratzian on the issue regarding the Heart & Lung and disability benefits that was to be resolved in the settlement agreement. Plaintiff claims that Heart & Lung and disability benefits are not necessarily medical benefits for a police officer. (Doc. 47, p. 3). When Attorney Deratzian wrote to Plaintiff on August 16, 2004, he clearly specified the settlement terms regarding medical benefits for Plaintiff and his family, and Plaintiff was given the opportunity to clarify these terms if they did not accurately state his demand. As stated, the evidence reveals that Plaintiff did not do so at this time. Plaintiff does not submit any evidence that he ever contacted Attorney Deratzian regarding Attorney Deratzian's August 16, 2004, letter to clarify what he (Plaintiff) meant by heart and lung benefits, *i.e.* back pay and/or future compensation. While Plaintiff now contends that medical benefits are only one aspect of heart and lung and disability and also include "salary related compensation," he could have clarified this issue in August, 2004. Despite being given the opportunity to make the clarification before the settlement was accepted by Defendants, he failed to act. Plaintiff does not offer any evidence that he timely contacted Attorney Deratzian to clear up any alleged misunderstanding as to what he meant by heart and lung benefits. Nor does Plaintiff point to any evidence in the record that he made such an attempt. Moreover, the medical

insurance issue was resolved in Plaintiff's favor when Attorney Deratzian obtained the Defendants' concession to pay for six (6) months of COBRA coverage for Plaintiff.  While Plaintiff disputes that the Borough Police Department had the requisite number of officers to comply with COBRA, he does not offer any evidence to support his claim.  (Doc. 47, p. 8).  Further, as Attorney Deratzian states in his Reply Brief, the Defendants agreed to provide the Plaintiff with medical benefits consistent with Plaintiff's demand and, consequently, a binding settlement was reached with Plaintiff's express authority. (Doc. 48, p. 2).

Plaintiff states that there was no meeting of the minds between him and Attorney Deratzian on all issues as detailed in the attorney's August 16, 2004, letter to him, namely with respect to his alleged more encompassing meaning of heart and lung benefits.  However, he does not deny that he had the opportunity in August, 2004, to clarify that in addition to medical benefits, he was also seeking to receive some type of compensation under heart and lung or disability.  Plaintiff states, without any substantiation, that he contacted Attorney Deratzian on several occasions "indicating that he did not intend to settle without settling the grievance or reinstatement or receiving some sort of Heart and Lung or retirement benefits which would compensate him for back salary in addition to the $125,000.00 he sought in damages." (Doc. 47, p. 5).  Plaintiff does not offer or point to any evidence to demonstrate that he did in fact contact Attorney Deratzian and made these additional settlement demands.  We do not find that Plaintiff's proffered Verizon phone bill attached to his Brief (Doc. 47), indicating that calls to Attorney Deratzian's office were made on August 26 and 27, 2004, shows that he conveyed the now alleged additional settlement terms to Attorney Deratzian in response to his attorney's letter.  Plaintiff offers no evidence that he contacted

Attorney Deratzian to clarify his meaning regarding Heart & Lung and disability benefits that included back wages and future wages in addition to medical benefits. In his Reply Brief, Attorney Deratzian states that Plaintiff did contact him in August, 2004, but that Plaintiff did not insist that wage continuation under Heart & Lung or Disability was an essential term of his settlement acceptance. (Doc. 48, p. 1). Attorney Deratzian states that Plaintiff understood that if he (Plaintiff) accepted a settlement of his § 1983 claim, then that payment would be in lieu of his right to receive back or future pay from any source. (*Id.*, p. 2).

Additionally, Defendants have presented evidence that all of the terms of settlement, over which Plaintiff gave Attorney Deratzian express authority according to the submitted documentation, were agreed to by them. Plaintiff submitted no evidence to support his present allegation that he requested salary payment from the Heart & Lung benefits in addition to medical benefits from the Heart & Lung. (Docs. 47 & 50). Plaintiff has been given ample opportunity to offer any evidence that he may have to support his claim regarding the alleged discrepancy over his more inclusive meaning of Heart & Lung benefits. He was given the chance to clarify his meaning over these benefits by Attorney Deratzian, but he has not offered any evidence that he timely objected to the settlement clearly specified to him and that he demanded the addition of back and/or future salary payments under Heart & Lung benefits.

Additionally, Defendants state in their Reply Brief that the Plaintiff has represented to this Court during the in-person conference on November 23, 2004, that the only issue remaining that he sought to pursue was his employment termination grievance, and that the $125,000 sum certain was satisfactory. The recollection of Attorney Deratzian regarding the November 23, 2004,

conference is essentially the same as the recollection of Defendant's counsel. (Doc. 48, p. 2). The Court's recollection of the November 23, 2004, conference is consistent with defense counsel's and Attorney Deratzian's representations. (Doc. 49, pp. 1-2). While other issues may have been discussed at the November, 2004, conference, the clear impediment to resolution of the case was the Plaintiff's insistence on reinstatement.

Moreover, as discussed, the Plaintiff simply does not point to any evidence demonstrating that his express settlement authorization to Attorney Deratzian included a term that he would receive any wages under Heart & Lung disability. Conversely, the Defendants' evidence shows that this additional concession was not part of the agreed upon settlement of this case. Further, in his Reply Brief, Attorney Deratzian concedes that Plaintiff contacted him within the week after his August 16, 2004, letter, but he states that the Plaintiff did not insist that salary payments under Heart & Lung or disability was a required term of his acceptance of the settlement. (Doc. 48, p. 1). As stated, Attorney Deratzian substantiates Defendants' contention that at the November, 2004, conference with the Court, Plaintiff acknowledged that if he accepted a settlement of his § 1983 claim, then that payment would be in place of his rights to receive back and future wages from any source. (*Id*., p. 2). Attorney Deratzian states, as the evidence shows, that in September, 2004, the sole remaining issue for settlement was the obtainment of medical benefits. The evidence indicates that this issue was successfully resolved by Attorney Deratzian. Thus, we agree with Attorney Deratzian (*Id*.) that once the Defendants offered the continuation of medical benefits to the Plaintiff, as he requested, a binding settlement was reached with respect to Plaintiff's § 1983 claim, which he gave his counsel express authority to accept.

Attorney Deratzian asserts that the only possible term in the settlement agreement that was not expressly authorized by Plaintiff was the term barring him from seeking reinstatement with the Borough Police Department. Notwithstanding this issue, we agree with Defendants and Attorney Deratzian that with respect to the monetary amount and the medical benefits term of the settlement agreement, the Plaintiff gave his express authority to his counsel to settle his § 1983 claim. With respect to the issue of whether Plaintiff gave his express authority to waive his employment termination grievance, including his right to seek reinstatement, we find that the Plaintiff has not expressly waived this claim and that he is free to pursue his grievance if he so chooses.[8] Therefore, we shall grant Defendants' Motion to Enforce Settlement.

An appropriate Order will be issued.

 **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 15, 2005**

---

[8] We note that the resolution of the Plaintiff's grievance issue does not affect our finding that his present § 1983 action was settled.